**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHARLES SMITH and DOROTHY**
**CAPEZZA,**

        **Plaintiffs,**

**v.**                                    **Case No: 8:15-cv-579-T-36AEP**

**THE VILLAGE CLUB, INC. and JIM**
**RUBERT,**

        **Defendants.**

_____/

## O R D E R

This matter comes before the Court upon the Defendants' Motion to Dismiss with Prejudice Plaintiffs' Complaint (Doc. 6). The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Motion to Dismiss.

**I.**     **Facts Alleged by Plaintiffs[1]**

Plaintiffs Charles Smith ("Smith") and Dorothy Capezza ("Capezza") have filed a four-count Complaint against Defendants The Village Club, Inc. d/b/a Brookhaven Village, Inc. ("Brookhaven") and one of its Board Members, Jim Rubert ("Rubert"), alleging, *inter alia,* violations of the Fair Housing Act ("FHA"). *See* Doc. 1. Brookhaven operates housing units in which both Smith and Capezza reside. *See id.* ¶¶ 3-7. On February 23, 2015, Brookhaven's Board of Directors ("BOD") voted to initiate legal action against Brookhaven residents that have dogs, including Smith and Capezza. *Id.* ¶ 11. Both Smith and Capezza allege that they are entitled to

---

[1] The following statement of facts is derived from Plaintiffs' Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

keep their dogs, despite Brookhaven's pet restrictions, because they are service animals necessary to accommodate Smith and Capezza's disabilities.

### A.       Charles Smith

Smith suffers from severe hearing loss that requires the use of hearing aids, which he asserts is a "handicap" pursuant to the FHA. *Id.* ¶ 15. Smith's service animal assists Smith in coping with his hearing loss by alerting him to sounds, especially when he is sleeping and therefore not wearing his hearing aids. *Id.* ¶¶ 16-17. Smith has resided in the Brookhaven Village community since March of 2014. *Id.* ¶ 18. Prior to moving to Brookhaven Village, Smith notified Brookhaven's then President, Frank Nutter, of his need for a service animal due to his hearing loss, and provided the dog's vaccinations and registration information. *Id.* ¶ 19. Smith was told by Frank Nutter that his service dog would not be an issue. *Id.* For approximately nine months thereafter, Smith lived with his service animal in Brookhaven. *Id.* ¶ 20

On December 3, 2014, Brookhaven, through counsel, sent Smith a threatening letter demanding that he remove his dog from the premises within thirty (30) days. *Id.* ¶ 21. The letter warned that if Smith did not comply "the Association will have to take further actions in order to enforce its Rules and Regulations, including the possible initiation of legal actions against you." *Id.* On December 4, 2014, Smith sent Brookhaven a letter in which he informed Brookhaven and its counsel that when he moved into the community, he informed the President of Brookhaven that he has a service dog "and provided the association with vet records stating her shots are up to date and she is registered." *Id.* ¶ 22.

On December 23, 2014, Brookhaven, by way of counsel, sent Smith a letter stating that the Brookhaven Village Board of Directors must have the opportunity to fully investigate this matter, and instructing Smith to:

2

1) Produce medical records and/or documents to demonstrate that [he is] suffering from a medical disability or handicap that has been diagnosed by a healthcare provider, unless [his] medical disability or handicap is readily ascertainable;

2) Demonstrate how this service animal reasonably accommodates [his] medical disability or handicap. This would include providing a copy of the prescription written by a healthcare provider;

3) Demonstrate how this service animal has special skills or training to accommodate [his] medical disability or handicap. This would include providing any certification that the animal has received which notes its training as a service animal; and

4) Demonstrate how the special skills or training of the service animal set it apart from an ordinary pet

*Id.* ¶ 23.

Smith sent a letter the following day to Brookhaven, in which he again reiterated that his dog is a service dog that assists him with his hearing loss. *Id.* ¶ 24. On January 6, 2015, Brookhaven sent Smith a "STATUTORY OFFER TO PARTICIPATE IN PRE-SUIT MEDIATION," and stating that if he fails to participate in mediation, "suit may be brought against you by the Association without further warning. *Id*. ¶ 25.

Smith, through counsel, provided to Brookhaven a letter from his physician, Doctor of Audiology, Dr. Gyl Kasewurm, Au. D., which verified Smith's disability due to hearing loss, and explained: "Mr. Smith sleeps without his hearing aids, and often cannot hear someone at the door even when he is wearing them. His dog alerts him when someone is at the door barking loudly and jumping on the bed, or circling Mr. Smith's legs if he is in a chair. The dog would also alert Mr. Smith if there was an intruder." *Id*. ¶ 27. Smith's counsel requested confirmation that Brookhaven Village has waived the community's no pet rule for Mr. Smith's assistance animal within 7 days of the correspondence. *Id*. No such confirmation has been received. *Id.* Instead, Brokhaven's counsel continued to demand additional information and documentation from Smith. *Id*. ¶ 28.

### B.      Dorothy Capezza

Plaintiff Dorothy Capezza ("Capezza") suffers from severe anxiety, a mental impairment which substantially limits one or more major life activities, and therefore alleges that she suffers a "handicap" as defined by the FHA. Doc. 1 ¶ 34. Capezza relies upon an assistance animal that provides support for and/or ameliorates the symptoms of her anxiety disorder. *Id.* ¶ 35.

Capezza has resided in Brookhaven Village community since January 2013. *Id*. ¶ 36. Prior to moving to Brookhaven Village, Capezza informed Brookhaven's then President, Frank Nutter, that she would not move to the community unless she were allowed to reside therein with her emotional-support dog. *Id.* ¶ 37. Per request of Frank Nutter, Capezza provided Brookhaven with a copy of the dog's vaccination information and license, and a prescription from Capezza's doctor attesting to her need to live with the dog as an emotional support animal. *Id.* ¶ 38.

On December 3, 2014, Brookhaven sent Capezza a letter demanding that she remove her dog from the premises within 30 days. *Id*. ¶ 39. On December 17, 2014, Capezza sent a letter to Brookhaven in which Capezza informed Brookhaven and its counsel that she had prior approval for her dog, and attached copies of two prescription notes for her emotional-support animal written by Capezza's physician. *Id.* ¶ 40.

In a letter dated December 31, 2014, Brookhaven, by way of counsel, sent Capezza another letter mirroring the December 23, 2014, letter above that was sent to Smith. *Id*. ¶ 41. Six days later, Brookhaven served Capezza with the STATUTORY OFFER TO PARTICIPATE IN PRE-SUIT MEDIATION, also mirroring the same information, stated above, that was sent, on January 6, 2015, to Smith. *Id.* ¶ 42. As of the date of this filing, Brookhaven has failed to grant Capezza an accommodation for an emotional support animal. *Id.* ¶ 44.

## II.     Standard of Review

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

When, as here, documents are attached as exhibits to the pleading those documents are considered a part of the pleading for all purposes. *See* Fed. R. Civ. P. 10(c). If there is a conflict between the complaint and the supporting documents, the information contained in the supporting documents controls. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

## III.     Analysis

Defendants now move to dismiss Plaintiffs' Complaint with prejudice. Plaintiffs assert claims for failure to reasonably accommodate and intimidation against both Defendants. Defendants attack Plaintiffs' claims for failure to accommodate as insufficiently pleaded. However, Defendants have made no argument regarding the claims for intimidation.

A.        **Failure to State a Claim**

To state a claim for failure to accommodate pursuant to 42 U.S.C. § 3604(f)(3)(B), the Plaintiffs must allege that: (a) each of them suffered from a handicap within the meaning of the FHA; (b) Defendants knew, or should have known, of the disability; (c) the requested accommodation was necessary to afford "an equal opportunity to use and enjoy the dwelling"; (d) the requested accommodation is reasonable; and (e) the Defendants refused to make the accommodation. *See Schwartz v. City of Treasure Island,* 544 Fed.3d 1201, 1218-19 (11th Cir. 2008); *Hawn v Shoreline Towers Phase I Condominium Association, Inc.,* 347 Fed. Appx. 464, 467 (11th Cir. 2009). The FHA defines "handicap" as "(1) a physical and mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such impairment. . ." 42 U.S.C. §3602(h). Federal Regulations interpret "physical and mental impairment" to include any "mental or psychological disorder," such as "emotional illness." 24 C.F.R. §100.201(a)(2). Federal Regulations interpret "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. §100.201(b).

Here, Plaintiffs allege that Defendants violated the FHA by denying the Plaintiffs' requests to keep their service animals. Plaintiffs allege that Smith's handicap is hearing loss and Capezza's handicap is anxiety.

Defendants claim that Capezza failed to provide adequate documentation to show that she is disabled or handicapped within the meaning of the FHA. The allegations in the Complaint, which must be accepted as true at this time, indicate that Capezza provided Defendants with two prescription notes written by Capezza's physician which stated that Capezza suffers from anxiety and needs an emotional-support animal. Doc. 1 ¶¶ 38-40. Thus, there are sufficient allegations to

show that Capezza has provided Brookhaven with documentation of her handicap and/or disability within the meaning of the FHA.

Defendants also argue that Smith failed to provide any documentation or evidence to show that his "service dog" received any type of training as a "service animal." Doc. 6 at p. 12. However, the Complaint alleges that Smith, through counsel, provided defendants with a letter from his physician which states, "Mr. Smith sleeps without his hearing aids, and often cannot hear someone at the door even when he is wearing them. His dog alerts him when someone is at the door by barking loudly and jumping on the bed, or circling Mr. Smith's legs if he is in a chair. The dog would also alert Mr. Smith if there was an intruder." Doc. 1 ¶ 27. Upon deciding that the documentation provided by Smith's physician was not sufficient, Defendants sent Smith another letter requiring more documentation. *Id.* ¶ 23.

Plaintiff responded that the documentation previously provided by Smith's physician was sufficient to show that the accommodation was necessary to afford an equal opportunity to use and enjoy the dwelling and, therefore, Smith was not required to provide the additional information requested by the defendants. Housing and Urban Development (HUD) has consistently taken the position that for purposes of FHA, "animals necessary as a reasonable accommodation do not necessarily need to have specialized training. Some animals perform tasks that require training, and others provide assistance that does not require training." *See* Pet Ownership for the Elderly and Persons with Disabilities, 73 F.R. 63834-38 (October 27, 2008). Further, multiple courts have rejected a requirement that a hearing dog must be professionally trained or certified, *Green v Housing Auth.*, 994 F. Supp. 1253, 1256 (D. Or. 1998) (citing *Bronk v Ineichen,* 54 F.3d 425, 430 (7th Cir. 1995)), and HUD has promulgated clear guidance regarding assistance animals, (Service Animals for People with Disabilities in Housing and HUD-Funded Programs, FHEO Notice:

FHEO-2013-01 (April 25, 2013)) which specifically states that "[f]or purposes of reasonable accommodation requests, neither the FHA nor section 504 requires an assistance animal to be individually trained or certified." Therefore, the documentation provided by Smith's physician is sufficient to support his claim for failure to accommodate.

Next, Defendants allege that there was no refusal to grant the plaintiffs' request for accommodations, but only that they were taking time to perform a meaningful review of the request to determine if it is statutorily required. However, demands for extraneous information regarding a requested accommodation have been found to constitute denial of accommodations under the FHA. *Bhogaita v Altamonte Heights Condo. Ass'n,* 765 F.3d 1277 (11th Cir. 2014). Here, Plaintiffs allege that Defendants have repeatedly asked for extraneous documentation that is not required under the FHA. They assert, by making the provision of such documentation a pre-requisite to granting an accommodation, the Defendants have effectively and illegally denied Plaintiffs the reasonable accommodations they need. Doc. 7, pg. 8

### B.    Mootness

Finally, Defendants assert that even if Capezza's Complaint did set forth a cause of action, her claim still should be dismissed based upon her admission that prior to filing this lawsuit, her dog died. Defendants claim that the death of Capezza's dog renders her claims moot and no longer subject to the jurisdiction of this Court. Doc. 6 at p. 18.

Article III of the Constitution limits Federal judicial power to that of "cases and controversies." The dispute before the court must be real and live, not feigned, academic or conjectural. *Russman v Board of Education,* 260 F.3d 114, 118 (2d Cir. 2001). When the issues in dispute between the parties "are no longer live,'" a case becomes moot. *Powell v McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d. 491 (1969) and, "the court loses jurisdiction over the

suit which therefore must be dismissed." *Russman v Board of Education,* 260 F.3d at 118-19. While not indicated by the Complaint, Plaintiff concedes the fact that her dog died but argues that the claim is still "live" because she is currently trying to get another dog and is being prevented from doing so without a valid waiver from Defendants. Doc. 7 at p. 9. Thus, Capezza is still seeking an accommodation, even if she will be using a different animal, making the dispute still an active case or controversy. Accordingly, it is

**ORDERED that** Defendants' Motion to Dismiss (Doc. 6) is **DENIED**.  In accordance with the Federal Rules of Civil Procedure, Defendants shall answer the Complaint.

**DONE AND ORDERED** in Tampa, Florida on August 11, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any