THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES SMITH AND
DOROTHY CAPEZZA,

      Plaintiffs,

                                   Case No.: 15-cv-00579-CEH-AEP

v.

THE VILLAGE CLUB, INC.
d/b/a BROOKHAVEN VILLAGE,
INC., and JIM RUBERT, individually,
JOHN BERNDT, individually,
JOYCE BURTON, individually,
MICKIE CRITTENDEN, individually, and
TAMMY WALKER, individually.

      Defendants.
_____/

**<u>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
PLAINTIFF CAPEZZA'S CLAIMS OF FAILURE TO REASONABLY
ACCOMMODATE AGAINST DEFENDANTS THE VILLAGE CLUB, INC. d/b/a
BROOKHAVEN VILLAGE, INC., JIM RUBERT, JOHN BERNDT, JOYCE BURTON,
MICKIE CRITTENDEN AND TAMMY WALKER AND PLAINTIFF CAPEZZA'S
CLAIMS FO INTIMIDATION AGAINST DEFENDANTS BROOKHAVEN VILLAGE,
INC. and JIM RUBERT.</u>**

COME NOW, the Defendants, THE VILLAGE CLUB, INC. d/b/a BROOKHAVEN

VILLAGE, INC. (hereinafter "BROOKHAVEN"), JIM RUBERT (hereinafter "RUBERT"), JOHN

BERNDT (hereinafter "BERNDT"), JOYCE BURTON (hereinafter "BURTON"), MICKIE

CRITTENDEN (hereinafter "CRITTENDEN") and TAMMY WALKER (hereinafter "WALKER"),

by and through their undersigned attorney, and hereby file this, their Motion for Partial Summary

Judgment, and in support thereof, state as follows:

**STANDARD**

"Summary judgment is appropriate where there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Specifically, regarding claims under section 3604(f) of the Fair Housing Act (FHA), where there is no genuine issue of material fact as to a housing provider's knowledge of a plaintiff's disability and the necessity of an accommodation, summary judgment in favor of the housing provider is proper. *Hawn v. Shoreline Towers Phase 1 Condominium Assn'n, Inc.*, 347 Fed.Appx. 464, 468 (11th Cir. 2009).

**FACTS**

Plaintiff CAPEZZA resides in the Brookhaven Village community at 6410 Lolly Bay Loop N.E., Winter Haven, Florida.  **Doc. No. 39, ¶¶40, 41**. The portion of the Brookhaven Village community in which Plaintiff CAPEZZA resides is not within the designated "Pet Section" pursuant to Article V, Section 6 of the Declarations of Covenants, Restrictions, Limitations, Conditions, Charges and Uses for the Brookhaven Village community and, consequently, was not permitted under the rules to keep a pet at her residence.  At the time she moved into the Brookhaven Village community, Plaintiff CAPEZZA had a dog, Buttons, a miniature poodle-Pomeranian mix, whom she had had for 12 years prior to moving to the Brookhaven Village Community and whom she alleges she relied upon for support for and/or amelioration of the symptoms of her anxiety disorder; a condition which she has alleged substantially limits one or more of her major life activities.  **Doc. No. 39, ¶¶40, 41.**  In support of her request to keep Buttons despite the rules prohibiting keeping a pet outside the "Pet Section", Plaintiff CAPEZZA presented to the Defendants two prescriptions from her physician, Preeti Harchandani, M.D., reading:

December 2, 2013:   **Pt (*sic*) needs to keep her dog for companionship due to anxiety issues.**

December 10, 2014:  **Ms. Capezza needs her dog for emotional well being and support.**

Prescriptions from Dr. Hachandani attached hereto as **Exhibit A**.

By and through correspondence from its counsel on December 31, 2014, the Defendants requested additional information from Plaintiff CAPEZZA as necessary to evaluate if her requested accommodation may be necessary because of a disability, as defined under the FHA, which Defendants were within their rights to request. Correspondence dated December 31, 2014 attached hereto as **Exhibit B**; See *Joint Statement of The Department of Housing and Urban Development and the Department of Justice concerning Reasonable Accommodations Under the Fair Housing Act*, Pages 12-14, Section Nos. 17 and 18, attached hereto in part as **Exhibit C**.  However, Plaintiff CAPEZZA did not provide any additional information to the Defendant.  Plaintiff CAPEZZA testified to this during her deposition; specifically explaining that she did not think the Defendants were entitled to the additional information they requested. Thereafter, having not received any additional information from Plaintiff CAPEZZA, Defendants sent to Plaintiff CAPEZZA on January 6, 2015 a Statutory Offer to Participate in Pre-Suit Mediation pursuant to Fla. Stat. §720.311. Statutory Offer to Participate in Pre-Suit Mediation dated January 6, 2015 attached hereto as **Exhibit D**.  Plaintiff CAPEZZA did not agree to mediation and instead filed the underlying suit against Defendants on March 16, 2015.

## ARGUMENT

Plaintiff CAPEZZA has alleged that the Defendants, the Association as a whole and each of the board members of the Association individually, failed to reasonably accommodate her need for

a disability related emotional support animal, as required under 42 USC §3604(f)(3)(B). However, Plaintiff CAPEZZA has failed to demonstrate the elements as required in order to prevail under such a claim. "To prevail on a Section 3604(f)(3)(B) claim, a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-9 (11th Cir. 2008).

A defendant **cannot** be liable for denying a reasonable and necessary accommodation "if [it] never knew the accommodation was in fact necessary;" meaning the defendant "must know or reasonably be expected to know of the existence of **both** the handicap **and** the necessity of the accommodation." *Hawn*, *supra* at 467, citing *Schwarz v. City of Treasure Island*, *supra* at 1219; *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (*emphasis added*). It is appropriate for a housing provider to request additional information concerning a request under the FHA. (See *Joint Statement of The Department of Housing and Urban Development and the Department of Justice concerning Reasonable Accommodations Under the Fair Housing Act*; attached as Exhibit F to Plaintiff CAPEZZA's Amended Complaint. "A housing provider may not ordinarily inquire as to the nature and severity of an individual's disability (...). However, in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability (i.e. has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation.")

a.      **No knowledge of disability or handicap within the meaning of the FHA.**

"Logically, the first argument that must be considered is whether [the plaintiff] is handicapped as the term is used in the FHA. If [the plaintiff] was not "disabled or handicapped within the meaning of the FHA," all other arguments are irrelevant as the first element of [p]laintiff's FHA claim remains unsatisfied." *Peklun v. Tierra Del Mar Condominium Association, Inc.*, 2015 WL 8029840, *8 (S.D. Fla. 2015). Furthermore, merely noting the existence of a physical ailment, [...] without more, does not constitute a disability within the meaning of the applicable statute." *Id*. Where the allegations under a FHA claim assert that the alleged disability impairs one or more of a plaintiff's life activities, sufficient supporting evidence beyond conclusory statements is required. *Id*. at 8-9.  "Clarity is important when defining a physical impairment [under the ADA] because the determination of whether [a plaintiff] is substantially limited in a major life activity is determined by examining the facts and circumstances surrounding her *particular* impairment." *Id*. at *9, citing to *Reis v. Universal City Dev. Partners, Ltd.*, 442 F.Supp 2d 1238, 1244 (M.D. Fla. 2006).

In *Peklun*, the court addressed the evidence presented in the form of affidavits of the plaintiff's treating physicians which he alleged supported his suffering from kidney disease, lung disease, anxiety and depression.  *Id*. at *9.  However, none of the documents presented supported that any of these conditions limited the plaintiff's life functions.  *Id*.  As a result, the court felt that the plaintiff's allegations of these particular medical conditions did not support a finding that he was disabled under the FHA. *Id*. at 9.

Similarly, in *Hawn*, the plaintiff seeking to have a companion animal in a residence which prohibited pets submitted a letter to the housing provider which "included unclear explanation as to the nature and extent of his disability and was wholly inconsistent with the reasons he provided [...]

for wanting [the pet] in his condominium unit." *Hawn*, *supra* at 468.  His refusal to provide additional information upon the housing provider's request "prevented [the housing provider] from conducting a meaningful review of [plaintiff's] application and thereby [the housing provider] could not have actually known of [plaintiff's] disability and the necessity of a service animal." *Id*. As such, the 11th Circuit affirmed the District Court's granting of summary judgment in favor of the housing provider, as "[the plaintiff] had failed to provide sufficient evidence to establish that (a) [the housing provider] knew or should have known of the disability [and] (b) [plaintiff's] requested accommodation was necessary to afford him equal opportunity to use and enjoy his dwelling." *Id*. at 467, 468.

In the instant case, in order to prevail on her claims, Plaintiff CAPEZZA must first demonstrate that the ailment she allegedly suffers from; in the instant case, anxiety (**Doc. No. 39, ¶¶40, 41**); substantially limited one or more her life activities.[1]

Plaintiff CAPEZZA alleges in paragraphs 40 and 41 of her Amended Complaint that she "suffers from severe anxiety, a mental impairment which substantially limits one or more major life activities, and therefore suffers a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA" and that she "relied upon an assistance animal that provided support for and/or ameliorates the symptoms of her anxiety disorder." **Doc. No. 39, ¶¶40, 41**.  While Plaintiff CAPEZZA's allegations are appropriate under the terminology required for a disability, the allegations made are not supported by the documents produced to the Defendants to support Plaintiff CAPEZZA's claims.  The documents

---

[1] Plaintiff CAPEZZA, like the plaintiff in *Peklun*, highlights the first method of demonstrating a disability recognized under the FHA as 'a physical or mental impairment which substantially limits one or more of such person's major life activities,' as opposed to the other two methods of demonstration; which are therefore not discussed herein.

produced, as alleged by Plaintiff CAPEZZA and undisputed by the Defendants as the only documents provided prior to initiation of this litigation, included a copy of Buttons' vaccination information and license, and a prescription from Plaintiff CAPEZZA's doctor, Preeti Harchandani, M.D., "attesting to her need to live with Buttons as an emotional support animal," dated December 3, 2013; followed by a letter from Plaintiff Capezza and a second prescription from Dr. Harchandani dated December 10, 2014. **Doc. No. 39, ¶¶44, 46, Exhibit A**.  Specifically, the two prescriptions from Dr. Harchandani - the only medical documentation Plaintiff CAPEZZA produced to the Defendants, read as follows:

> **December 2, 2013:   Pt (*sic*) needs to keep her dog for companionship due to anxiety issues.**
>
> **December 10, 2014:  Ms. Capezza needs her dog for emotional well being and support.**

**Exhibit A**. Following receipt of these prescriptions, Plaintiff CAPEZZA alleges, and Defendants agree, that Defendants, by and through correspondence from their undersigned counsel, requested additional information to substantiate her claim and need for the requested accommodation.  **Doc. No. 39, ¶47**.  Thereafter, Plaintiff CAPEZZA submitted no additional information to the Defendants, other than correspondence from her counsel with no additional documents concerning her disability and the need for accommodation, and, rather, proceeded with litigation. **Doc. No. 39, ¶49**.

Like the plaintiff in *Peklun*, Plaintiff CAPEZZA merely makes conclusory allegations in her Amended Complaint that her anxiety substantially limits her life activities; however, no sufficient supporting evidence has been presented to the Defendant prior to the initiation of, nor during the pendency of, this litigation. There has been no evidence presented by Plaintiff CAPEZZA whatsoever to even identify *which* life activity or activities her alleged diagnosis of anxiety allegedly

substantially limit. Like the court in *Peklun* concluded concerning the *Peklun* plaintiff, Defendants are left wondering in what respect Plaintiff CAPEZZA's anxiety inhibits her major life functions; and this Court should find that Plaintiff CAPEZZA's alleged anxiety does not support a finding that she is disabled under the FHA. *Peklun*, *supra* at *9.

Furthermore, Curtis W. Cassidy, M.D., a general and forensic psychiatrist in Lakeland, Florida, reviewed the two prescriptions provided by Plaintiff CAPEZZA discussed herein. Affidavit of Dr. Cassidy attached hereto as **Exhibit E**. Based on his review of the documents provided, together with his knowledge of the standards for a disability or handicap under the FHA, Dr. Cassidy opined that the two prescriptions written by Dr. Harchandani "do not sufficiently document that Ms. Capezza suffers or suffered from a handicap or disability due to a psychiatric condition recognized in either the DSM-IV-TR or the DSM-5 which, now or at the time they were written, substantially limits or limited her in being able to engage in major life activities." *Id.* ¶6-10.

Based on the limited information provided by Plaintiff CAPEZZA to the Defendants, Defendants could not be reasonably expected to know of the existence of a handicap or disability and summary judgment should be granted in favor of the Defendants as to Plaintiff CAPEZZA's claims of Failure to Reasonably Accommodate against all Defendants.

**b.     No knowledge of the necessity of the accommodation.**

Even assuming that Plaintiff CAPEZZA provided sufficient documentation of a disability or handicap within the meaning of the FHA, which Defendants assert she has not for the reasons stated above, Plaintiff CAPEZZA did not provide any information concerning the necessity of the accommodation requested. "The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must

instead have ... the ability to conduct a meaningful review of the requested accommodation." *Hawn*, *supra*, at 468.

In *Hawn*, the plaintiff seeking to keep a companion animal produced a description of tasks his dog could perform, including "notifying [the plaintiff] of intruders, bringing the telephone upon request, bringing socks and shoes upon request, opening the refrigerator and bringing water, and giving a "hug" to calm down [the plaintiff] after a panic attack. *Id.* at 466, FN1. The court did not feel that this documentation, together with the other minimal documentation provided, provided the housing provider with sufficient knowledge of the necessity of the requested accommodation - the companion animal - to allow the plaintiff to have equal opportunity to use and enjoy his dwelling. *Id*. at 468.

Defendants' argument concerning Plaintiff CAPEZZA's failure to provide sufficient documentation of the necessity essentially mirrors that stated above under *Hawn*. The two limited prescriptions provided by Plaintiff CAPEZZA do not sufficiently explain the necessity of having a companion animal, be it Buttons or another dog, as it concerns her alleged disability; but merely make conclusory statements concerning benefits to her as to "companionship", "emotional well being" and "support." Furthermore, during her deposition, Plaintiff CAPEZZA testified that she had kept dogs for many years, having Buttons for the 12 years prior to moving to the Brookhaven Village community, and previously having two other miniature poodles for their life spans of 15 and 9 years each. During her deposition, Plaintiff CAPEZZA admitted that she sought a prescription from Dr. Harchandani for the purpose of being able to keep her dog.

In addition to addressing the existence of a disability based on the prescriptions provided by Plaintiff CAPEZZA to the Defendants, Dr. Cassidy also addressed the necessity of a companion

animal as an accommodation for the alleged disability.  Dr. Cassidy has opined that, not only do the prescriptions not support the existence of a handicap or disability under the FHA, but also that they do not document that she suffers from any handicap or disability due to a psychiatric condition under the FHA which would require a companion animal as a necessary component of treatment. **Exhibit E, ¶11-12.**

While the undersigned acknowledges the bond between a pet owner and their pet, based on the limited information provided by Plaintiff CAPEZZA to the Defendants, Defendants could not be reasonably expected to know of the necessity of the accommodation requested by Plaintiff CAPEZZA and summary judgment should be granted in favor of the Defendants as to Plaintiff CAPEZZA's claims of Failure to Reasonably Accommodate against all Defendants.

**c.      Claims of Intimidation against BROOKHAVEN and RUBERT are premised on acts which are not in violation of Section 3617.**

"To prevail on a claim brought under Section 3617, a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Kromenhoek v. Cowpet Bay W. Condo. Ass'n*, 77 F. Supp. 3d 462, 474 (D.V.I. 2014), citing to *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir.2009) (*internal citations omitted*).

In *Kromenhoek*, the plaintiff also sought to have a dog in a community with a "no dogs" policy, asserting that she needed the dog as an emotional support animal for her anxiety. *Kromenhoek*, *supra* at 466-7.  In addition to other claims, the plaintiff brought claims of retaliation

Case 8:15-cv-00579-CEH-AEP   Document 57   Filed 03/04/16   Page 11 of 13 PageID 677

against the association, asserting that medical information was distributed to non-board members and that the "no dog" resolution was added to the bylaws. *Id.* at 474. The board explained that their actions in enforcing the "no dogs" policy that had been in force for several years and that, once the information was submitted as requested by the board, they agreed to waive the fine assessed. *Id.* at 475. Because the "no dogs" policy pre-dated the plaintiff's request, there was no causal link between beginning the protected activity and the alleged retaliatory action, and summary judgment was granted in favor of the defendant. *Id.* at 475-6.

In the instant case, not only do the Defendants assert that Plaintiff CAPEZZA is not a protected individual under the FHA for the reasons stated above; but the Defendants also dispute that she was engaged in a protected activity or that they intimidated her on account of her protected activity, and that any such intimidation was motivated by an intent to discriminate. In her claims against the Board, THE VILLAGE CLUB, INC. d/b/a BROOKHAVEN VILLAGE, INC., as a whole, Plaintiff CAPEZZA asserts the offending act was Defendant's January 6, 2015 Statutory Offer to Participate in Pre-Suit Mediation. **Doc. No. 39, ¶68**. The Board admits that it sent correspondence to Plaintiff CAPEZZA in order to enforce the declarations, which had been in effect prior to Plaintiff CAPEZZA's purchase of property in the community. See **Exhibits B and D**. The actions taken by the Defendants were those authorized under the Declarations and the law; specifically, the FHA to request additional information concerning her alleged disability and the necessity of her requested accommodation, as discussed above, and Fla. Stat. §720.311, concerning a statutory *request*, not a demand or threat, for mediation, as a pre-requisite before further action could be taken to enforce the Declarations. At that time, as discussed above, Plaintiff CAPEZZA had not provided sufficient information to the Defendants for them to address her alleged disability and the necessity of the

Page 11 of 13

requested accommodation. Consequently, there is no evidence of an adverse action taken by the Defendants concerning any protected activity by Plaintiff CAPEZZA.

Concerning her allegations against RUBERT, Plaintiff CAPEZZA asserts that "at all times relevant to this action had actual knowledge of Plaintiff[...] CAPEZZA's disabilities; as well as knowledge of [her] need to live with [her] assistance animal[] which alleviate one or more symptoms of Plaintiff[...] CAPEZZA's disabilit[y] and which assist Plaintiff[] with one or more major life functions." **Doc. No. 39, ¶87**. As discussed above, Defendants contend that, as a matter of law, Defendants, including Defendant RUBERT, had no such knowledge based on the limited information provided by Plaintiff CAPEZZA.   Furthermore, the allegations of intimidation concerning Defendant RUBERT are premised on a single statement that Defendant RUBERT allegedly made, which, if accurate, is insufficient to rise to the level of intimidation to violate Section 3617.  See *Kromenhoek*, *supra* at 477, citing to *Sheikh v. Rabin*, 565 Fed. App'x. 512 (7th Cir. 2014). ("Even a broad reading of Section 3617, in order to account for less obvious but still illegal discrimination, does not make unfortunate skirmishes between neighbors unlawful.  Even potentially discriminatory statements exchanged between neighbors do not necessarily violate Section 3617.") As such, because the behavior complained of does not rise to the level of "intimidation" with Plaintiff CAPEZZA's rights under the FHA, Defendant RUBERT is entitled to judgment as a matter of law.  *Kromenhoek*, *supra* at 478.

## CONCLUSION

As a matter of law, Plaintiff CAPEZZA failed to provide sufficient information to allow the Defendants to address the existence of a disability under the FHA and the necessity of her requested accommodation.  For the reasons stated herein above, Defendants' respectfully request that this

Honorable Court enter Summary Judgment in favor of Defendants as to Plaintiff CAPEZZA's claims

of Failure to Reasonably Accommodate against Defendants THE VILLAGE CLUB, INC. d/b/a

BROOKHAVEN VILLAGE, INC., JIM RUBERT, JOHN BERNDT, JOYCE BURTON, MICKIE

CRITTENDEN and TAMMY WALKER and Plaintiff CAPEZZA's claims of Intimidation against

Defendants BROOKHAVEN VILLAGE, INC. and JIM RUBERT.

Respectfully Submitted,

/s/ Daniel F. Pilka
PILKA & ASSOCIATES, P.A.
Daniel F. Pilka
Florida Bar No. 442021
213 Providence Road
Brandon, Florida 33511
Tel: (813) 653-3800 • (863) 687-0780
Fax: (813) 651-0710
Attorney for Defendants
Email: dpilka@pilka.com
        eservice@pilka.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to: Marcy I. LaHart, Esquire, Marcy I. LaHart, P.A., 4804 SW 45th Street, Gainesville, Florida 32608 marcyl@justice.com; and Robert N. Hartsell, Esquire, Robert N. Hartsell, P.A., Federal Tower Building, 1600 S. Federal Highway, Suite 921, Pompano Beach, Florida 33062, Robert@Hartsell-Law.com, this 4th day of March, 2016.

/s/ Daniel F. Pilka
PILKA & ASSOCIATES, P.A.
Daniel F. Pilka
Florida Bar No. 442021
213 Providence Road
Brandon, Florida 33511
Tel: (813) 653-3800 • (863) 687-0780
Fax: (813) 651-0710
Attorney for Defendants
Email: dpilka@pilka.com
        eservice@pilka.com

DFP/DB (14-9215.12)